Williams, J.
 

 The appellant, The Ohio Bell Telephone Company, collected increased rates for telephone service under bond given in pursuance of the Pence Law (110 Ohio Laws, 366) which was later amended (113 Ohio Laws, 16) with a saving clause as to pending cases. The company paid the excise taxes upon the money so collected for the years 1.925 to 1932, inclusive.
 

 During all this period the rate case, in which such bond was given, was pending before the Public Utilities Commission and in the courts, and was finally decided and an order entered on April 26,1938. By such decision the appellant was found to have collected excessive increased rates, under bond, in the sum of
 
 *256
 
 $4,470,437, and was ordered to refund that amount with interest to telephone subscribers. The taxes previously paid on such principal sum amounted to $58,950.63. Thereupon the application for a certificate of abatement was filed as stated.
 

 The first question is whether under the statutes the Tax Commissioner had authority to issue a certificate of abatement for the excise taxes so paid on the amount of money rebated from excessive rates collected.
 

 • By Section 1464, G-eneral Code (118 Ohio Laws, 344), effective May 15, 1939, the Tax Commission was abolished and the Department of Taxation, including the Board of Tax Appeals and the office of the Tax Commissioner, created. As a part of the same enactment certain powers and duties of the Board of Tax Appeals and the Tax Commissioner were specifically enumerated in Sections 1464-1 to 1464-3, G-eneral Code, inclusive. ' >-
 

 Section 1464-3, G-eneral Code (118 Ohio Laws, 346), in its material part read:
 

 “All other powers, duties and functions of the Department of Taxation, other than those mentioned in sections 2 and 3 of this act, are hereby vested in and assigned to, and shall be performed by the Tax Commissioner, which powers, duties and functions shall include, but shall not be limited to the following powers, duties and functions: * * *
 

 “3. To exercise the authority provided by law relative to remitting or refunding taxes or assessments, including penalties and interest thereon, illegally or erroneously assessed or collected, or for any other reason overpaid; and, in addition to the authority so provided by law, the Tax Commissioner shall have authority as follows: on written application of any person, firm or corporation claiming to have overpaid to the Treasurer of State, at any time within five years
 
 *257
 
 prior to the making of such application but not prior to January 1, 1938, any tax payable under any law which the Department of Taxation is required to administer, or on his own motion, to investigate the facts and to make, in triplicate, a written statement of his findings; and, if he shall find that there has been an overpayment, issue, in triplicate, a certificate of abatement, payable to the taxpayer or his or its assigns or legal representative and showing the amount of the overpayment and the kind of tax overpaid.”
 

 .The position of the appellant is stated in its brief thus:
 

 “Where a public utility, required by the (former) Tax Commission to pay an excise tax on rate increases conditionally collected by the utility under bond pursuant to the former Pence Law, was subsequently, by refund order of the Public Utilities Commission, required to refund portions of the increases, such order of the Public Utilities Commission created an overpayment of taxes as of the date of the entry of the refund order (April 26, 1938) and appellant was entitled under the provisions of General Code Section 1464-3 to a certificate of tax abatement, as for taxes overpaid subsequent to January 1, 1938.”
 

 The appellee, the Tax Commissioner, contends: (a) That inasmuch as the taxes in question were paid during the years 1925 to 1932, both inclusive, or prior to the year 1938-, Section 1464-3, General Code, has not bestowed on him authority to grant the application of the appellant; and (b) that inasmuch as the Tax Commission had, by its orders, required payment of the amounts due during the respective years and no appeal was taken therefrom, the
 
 quantum
 
 of the tax due from the appellant is
 
 res judicata,
 
 and for such reason the Tax Commissioner has no jurisdiction to make a determination on the application.
 

 Under Section 1464-3, General Code, and within the limitations prescribed therein, the Tax Commissioner
 
 *258
 
 has authority to remit or refund taxes “illegally or erroneously * * * collected or for any other reason overpaid.” As the court construes the language employed, an erroneous or illegal collection of taxes would constitute an overpayment within the meaning of the statute.
 

 The bone of contention with respect to.overpayment is whether it took place when the taxes were originally paid or at the time the Public Utilities Commission made the excess payment illegal or erroneous by ordering repayment thereof to telephone subscribers. The section allows the abatement of taxes only within five years prior to the time of making application for abatement but not prior to January 1, 1938. The order for repayment or refund to the .telephone subscribers was made April 26, 1938. If the overpayment of taxes.within the meaning of the statute occurred as of the latter date, then the Tax Commissioner had authority to grant the certificate of abatement. There was nothing illegal or erroneous about the payment of taxes when originally made. It became illegal or erroneous only when the Public Utilities Commission made its order of refund on April 26, 1938. Within the meaning of the statute the overpayment took place on that date and came within the time fixed by law.
 

 The Tax Commissioner further maintains that in any event he had no jurisdiction for the further reason that the action of the Tax Commission constituted
 
 res jtidicata.
 
 The action taken by the Tax Commission consisted in including the increased rates collected in determining the gross receipts upon which excise taxes should be computed for the years in question, as provided in Section 5481, General Code; and in refusing, on application of the telephone company, to have the assessment therefor reviewed and corrected or to make any change in the amount previously determined to be gross receipts. From the order refusing the applica
 
 *259
 
 tion the company took no appeal, bnt paid the taxes under protest. This action of the Tax Commission did not amount to an adjudication as to overpayment of the taxes because that question could not arise until the Public Utilities Commission determined the rate case. If that body had ordered no refund whatever to telephone subscribers the amount of taxes paid would have been correct and there would have been no overpayment. On the contrary, a repayment to telephone subscribers was ordered, and then, for the first time, a right to abatement of taxes arose. There could be no adjudication on the right to a certificate of abatement for overpayment before the overpayment took place and, since overpayment took place as of the date of the order of the Public Utilities Commission, the action of the Tax Commission in compelling immediate payment of the taxes was not
 
 res judicata
 
 as between the parties herein.
 

 - Now, the Tax Commissioner makes an additional contention. He maintains “that neither the Board of Tax Appeals nor this court had or have any jurisdiction of the matter now before it for the reason that no-right of appeal exists at common law and no appeal has been provided by statute from the failure of the Tax Commissioner to grant a remission or refund of taxes.”
 

 Section 1464-1, G-eneral Code (118 Ohio Laws, 345), provides:
 

 “The Board of Tax Appeals shall exercise the following powers and.perform the following duties of the Department of Taxation: * * *
 

 “5. To exercise the authority provided by law to hear and determine all appeals and applications for rehearing or review or redetermination or correction of tax assessments, valuations, determinations, findings, computations or orders, including among others, appeals from the actions of county budget commis
 
 *260
 
 sions, from the decisions of county boards of revision, and
 
 from the actions of any assessing officer or other public official, including appeals and applications for rehearing or review or redetermination or correction of tax assessments, valuations, determindtions, findings, computations or orders of the Tax Commissioner or of corrections or redeterminations by the Tax Commissioner of any tax assessments, valuations, determinations, findings, computations or orders made by him;
 
 * * (Italics ours.)
 

 Within the meaning of this statutory provision the-finding by the Tax Commissioner that he had no authority to hear an application for a certificate of abatement and the denying of the application by him constituted action by a public official from which an appeal, was properly taken to the Board of Tax Appeals.
 

 For the reasons given the order of the Tax Commissioner and the decision of- the Board of Tax Appeals are reversed and the cause is remanded to the Tax Commissioner to hear the application for a certificate of abatement and for such further proceedings as are provided by law.
 

 Decision reversed and cause remanded.
 

 Weygandt, C. J., Matthias, Hart, Zimmerman andl Bell, JJ., concur.
 

 Turner, J., not participating.